**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

KELVIN HAMPTON,

Plaintiff,

v.

NANCY B. MARTHAKIS, et al.,

Defendants.

CAUSE NO. 3:25-CV-908-TLS-AZ

**OPINION AND ORDER**

Kelvin Hampton, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U .S.C. § 1915A, the court must screen the complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Hampton is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The events underlying the complaint occurred when Hampton was incarcerated at Indiana State Prison (ISP). He has since been transferred to Wabash Valley Correctional Facility. According to the complaint, Hampton suffers from chronic back and hip pain. He claims an orthopedic specialist ordered that he be given a chair in his cell to "offload spinal pressure at least three times a day." He claims his medical providers at ISP, Dr. Nancy Marthakis and Nurse Practitioner ("NP") Diane Thews, refused to follow the specialist's recommendation. They instead gave him a wedge pillow, which he claims did not serve the same function or alleviate

his pain. He claims that both providers falsely accused him of malingering and refused to take his pain seriously. He claims he filed grievances about the chair, and Dr. Marthakis allegedly became angry with him and falsely accused him of making threats against her. He further claims that he had to wait months to receive a back brace needed to manage his pain and help him ambulate, a delay he attributes to Major Wardlow (first name unknown), who had to approve him to have the brace in his cell. During the months he was without his brace, he claims to have suffered unnecessary pain and worsening of his condition. Based on these events, he sues the above individuals, as well as Warden Ron Neal, Centurion Medical Services, and the Commissioner of Indiana Department of Correction (IDOC), seeking monetary damages and injunctive relief.

Hampton first alleges claims for the denial of medical care under the Eighth Amendment. (ECF 1 at 10.) Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he has an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* at 104–06. A medical need is "serious" if it is one that a physician has diagnosed as requiring treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the prisoner must show that the defendant acted with deliberate indifference. *Estelle*, 429 U.S. at 104. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, "[d]eliberate indifference occupies a space slightly below intent and poses . . . an exacting standard requiring something approaching a total unconcern for

the prisoner's welfare in the face of serious risks." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (citation and internal quotation marks omitted).

In the medical context, inmates are "not entitled to demand specific care." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted). Nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id*. Because there is no one right way to practice medicine in the prison setting, courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted). At the same time, a prisoner is not required to show that he was "literally ignored" by medical staff to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). A provider's "choice of the easier and less efficacious treatment" can amount to deliberate indifference. *Id.* (citation and internal quotation marks omitted). Likewise, "delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Giving Hampton the inferences to which he is entitled at this stage, he plausibly alleges a serious medical condition, namely, chronic back and hip problems that were treated by a specialist. On the second prong, he claims Dr. Marthakis and NP Thews refused to give him a chair as directed by the specialist and instead gave him a wedge pillow, which did not address his pain and other symptoms. The mere fact that they disagreed with the specialist does not establish deliberate indifference, but he claims these providers would not give him the chair because they

falsely accused him of malingering and disregarded his pain. At this stage, he has plausibly alleged a deliberate indifference claim against the two medical providers.

He further claims that Major Wardlow delayed for months in approving him to have a back brace in his cell, which the orthopedist proscribed to assist him in ambulating and reduce his pain. His complaint can be read to allege that the delay was not attributable to any legitimate reason, but because he had been falsely labeled as a malingerer. He has alleged enough to proceed further against this defendant. *See Echols v. Ill. Dep't of Corr.*, No. 3:20-CV-00583-GCS, 2021 WL 25359, at *3 (S.D. Ill. Jan. 4, 2021) (explaining that denial of medical equipment stated claim for violation of Eighth Amendment's prohibition on cruel and unusual punishment).

As for the Warden and IDOC Commissioner, they cannot be held liable for damages merely because they oversee operations at the prison. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). It is also not plausible to infer that these high-level officials were personally involved in any of these events. His allegations could potentially state a claim for prospective injunctive relief against one or both of them, *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), but he is now at a different prison and there is no indication that the problem currently persists.[1] *See Kifer v. Ellsworth*, 346 F.3d 1155, 1157 (7th Cir. 2003) (explaining a prisoner "cannot benefit from an order to improve conditions in a jail in which he is no longer being held" and thus claim for injunctive relief was moot); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the

[1] The court notes that Hampton states the orthopedist later reversed her recommendation about the chair (ECF 1 at 5), and there is no indication from the record that he has a current order for a chair that is not being fulfilled at his present facility. Furthermore, claims related to the care he is receiving at his current facility, which is located in the Southern District of Indiana, would involve different providers and do not appear to belong in this lawsuit. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

first prison is moot unless he can demonstrate that he is likely to be retransferred.") (citation and internal quotation marks omitted). He will not be granted leave to proceed against these officials.

He also sues Centurion Health, the private company that employs medical staff at the prison. A company cannot be held liable for damages simply because it employs a medical professional who engaged in wrongdoing. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). A company performing a public function may be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), if the "unconstitutional acts of their employees . . . were carried out pursuant to an official custom or policy."[2] *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). To allege a plausible *Monell* claim, the plaintiff must identify an official policy that caused him injury. *Grieveson*, 538 F.3d at 771. A plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Hampton alleges generally that Centurion had a policy of failing to follow the instructions of specialists. However, as he describes it, the situation with his chair resulted from the determination of his individual medical providers that he was malingering, not from some overarching policy. In fact, he states that the specialist later reversed her recommendation about the chair because she was "misled" by his providers about his condition. (ECF 1 at 5.) There is also insufficient content from which the court could plausibly infer the existence of a widespread

[2] Although unclear, he may also be trying to sue the Warden or IDOC Commissioner in their official capacity under *Monell,* but such a claim is unavailing, because *Monell* only applies to municipal actors, not state officials. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

practice or custom, as Hampton only describes this one instance involving his own care, rather than repeated problems involving multiple prisoners. He has not stated a plausible *Monell* claim.

Hampton additionally sues Dr. Marthakis for unlawful retaliation in violation of the First Amendment. (ECF 1 at 11.) To state a claim under the First Amendment, a plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation and internal quotation marks omitted).

On the first prong, filing a non-frivolous grievance qualifies as protected First Amendment activity. *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). The court will presume for purposes of the screening order that Hampton's grievance about the chair was non-frivolous, as a specialist prescribed it for him to address a medical issue. On the second prong, being falsely accused of threatening a prison doctor—and the punishment that might result from that accusation—could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). On the final prong, he claims there was a direct link between his First Amendment activity and the false accusation, in that Dr. Marthakis made the accusation because she was angry about his grievance. He has alleged enough to proceed further on a First Amendment claim.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dr. Nancy Marthakis and Nurse Practitioner Diane Thews in their personal capacity for money damages for deliberate

indifference to the plaintiff's need for a chair to address his back and hip problems in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Major Wardlow (first name unknown) in his personal capacity for money damages for deliberate indifference to the plaintiff's need for a back brace to address his back and hip problems in violation of the Eighth Amendment;

(3) GRANTS the plaintiff leave to proceed against Dr. Nancy Marthakis in her personal capacity for money damages for falsely accusing the plaintiff of threatening her in retaliation for grievances he filed in violation of the First Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Warden Ron Neal, Centurion Medical Services, and Commissioner as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Major Wardlow (first name unknown) at the Indiana Department of Correction and to send him a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis and Nurse Practitioner Diane Thews at Centurion Health and to send them a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(9) ORDERS Major Wardlow, Dr. Nancy Marthakis, and Nurse Practitioner Diane Thews to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 5, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT